UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05cv370

| | |
|---|---|
| DENNIS NOVOTNY AND MARK TAYLOR, d/b/a as ETV-PLUS.COM, <br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL CHAPMAN, d/b/a as FV Productions, et al.,<br><br>Defendants. | MEMORANDUM AND ORDER |

In this civil action for declaratory, injunctive and monetary relief, Plaintiffs Dennis Novotny and Mark Taylor accuse Defendant Michael Chapman of violating Title II of the Digital Millenium Copyright Act, 17 U.S.C. § 512(f), by filing bad-faith complaints of copyright infringement with the plaintiffs' Internet service providers, and others, with the intent that such complaints would result in the suspension of the plaintiffs' internet services and accounts. (Doc. No. 1). The plaintiffs presently are requesting that the Court enjoin the defendant from filing any more complaints, as the previous complaints did result in the temporary suspension of their internet services. (Doc. No. 3). For the purposes of reviewing the plaintiffs' request for interim relief, jurisdiction is present pursuant to 28 U.S.C. § 1331. Based on the record before it, the Court finds that the plaintiffs have failed to show a likelihood of actual and imminent irreparable injury: the plaintiffs have removed the videos-at-issue from their website, thus precluding the injury they seek to have the Court prevent. Therefore, the Court will deny their request. The reasons for the Court's decision follow, beginning with its findings of fact.

1

FINDINGS OF FACT

The defendant, Michael Chapman, makes instructional videos in which he demonstrates a particular method of cutting women's hair. In 2002, Chapman entered into an agreement with the plaintiffs, Dennis Novotny and his business partner Mark Taylor, whereby Chapman would deliver originals of his video to the plaintiffs, who would then convert them into digital format and publish and sell them on their website as downloadable streaming media clips. The parties agreed that "PayPal" would process their customers' online payments.[1] Chapman allegedly represented to Novotny and others that he held a registered copyright for his videos. While he subsequently has admitted that he does not have a federally registered copyright for any of the videos in question, Chapman still maintains that the videos are his original work.

In early 2004, sales of Chapman's videos through the plaintiffs' website began to wane. In October of that year, Chapman sent the plaintiffs an email requesting that they remove his videos from their website. The plaintiffs responded two weeks later with a series of emails explaining that: (1) they had made significant expenditures to reformat the original video supplied by Chapman, a task for which they expected to be reimbursed before removal of the videos; (2) Chapman's demand to terminate their agreement without reasonable notice was unacceptable, and any termination would be negotiated only through mutually acceptable terms, preferably through legal counsel; and (3) the plaintiffs were within their rights to leave the videos on their website since the videos, as edited and reformatted, were now the plaintiffs' intellectual property. The parties' relationship thus began to deteriorate.

---

[1] When a customer paid to download a video, the transaction was conducted and secured through PayPal, who then would distribute a certain percentage of each payment into the parties' respective Paypal accounts.

Chapman subsequently filed "complaints"of copyright infringement pursuant to the Digital Millenium Copyright Act with Hurricane Internet Services and Interland, Inc., the plaintiffs' third-party Internet service providers, and Paypal, alleging that material on the plaintiffs' website was infringing upon the defendant's copyrighted videos.[2] Chapman also alleged on Internet messages boards that the plaintiffs were "pirating," "bootlegging," and "stealing," the defendant's copyrighted videos, likening the plaintiffs' conduct to that of "thieves" and "criminals." (Chapman, however, continued to accept royalty payments through PayPal, pursuant to the original agreement.) Paypal twice temporarily suspended the plaintiffs' access to their account as a result of the DMCA complaints of violation filed by Chapman in January and August of 2005. Hurricane likewise temporarily suspended the plaintiffs' internet service for several days in July and August 2005. In response, the plaintiffs removed the videos from their website. Then they filed the instant complaint seeking: a "Declaration that [plaintiffs] had a non-exclusive distributorship license agreement with the Defendant," an injunction preventing the Chapman from filing any more DMCA complaints with plaintiffs' Internet service providers, and "Damages pursuant to the [DMCA]." (Although the complaint was filed in August 2005, service of process was not properly effected until the following January.) In November, Chapman filed another DMCA complaint, this one with DivX Networks, a software supplier for the plaintiffs. DivX "dismissed" his complaint, however, as the videos already had been removed from the plaintiffs' website. Chapman has not filed any more DMCA complaints since November.

---

[2]A copyright owner who has a good faith belief that a website may be infringing his copyrighted material may file a complaint with the alleged infringer's Internet service provider pursuant to provisions set forth in § 512(c)(3) of the DMCA. Once the service provider becomes aware that a third party is using its system to infringe, it has a responsibility to remove, or disable access to, the allegedly infringing material. If the service provider fails to do so, it may be held liable for any infringement.

ANALYSIS

Injunctive relief "is considered an extraordinary remedy which is to be applied 'only in limited circumstances,' " MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (citations omitted), and the movant bears burden of establishing that the circumstances demand a preliminary injunction or temporary restraining order, Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1992). As the instant plaintiffs apparently are proceeding pro se, the Court shall construe their application for injunctive relief leniently. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

In evaluating whether the circumstances demand a preliminary injunction, the Court must first determine whether the plaintiff has made a strong showing of the possibility of irreparable harm if the injunction is denied. If a showing of irreparable harm is made, the Court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant. If the balance of the likely harms tips decidedly in favor of the plaintiff, then it will be enough that the plaintiff has shown the existence of serious questions going to the merits and a demonstration that there is at least a fair chance the plaintiff will prevail. If the balance of hardships is substantially equal as between the plaintiff and defendant, then the plaintiff's probability of success begins to assume real significance, and interim relief shall be granted only upon a clear showing of a likelihood of success on the merits. See Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 195 (4th Cir. 1977); Direx, 952 F.2d at 812.

The crux of the plaintiffs' argument is that their success on the merits is likely, and, unless an injunction is ordered, the defendant "surely intends to continue to invoke the provisions of the DMCA unlawfully," thus causing irreparable harm to the plaintiffs' "reputation and business interests." Based on its review of the record, however, the Court finds that the plaintiffs have not

4

demonstrated a *likelihood* of irreparable harm absent the issuance of a preliminary injunction in the instant case. Certainly, the injury the plaintiffs' seek to avoid – the damage to "reputation and business interests" caused by the defendant's filing of "improper DMCA complaints" with plaintiffs' service providers – generally supports a finding of irreparable harm. See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551-552 (4th Cir. 1994) (the loss of good-will generally constitutes irreparable injury). The Court, however, finds that this injury is not likely to reoccur since the plaintiffs neither are posting the videos-at-issue on their website, nor have they cited any interest in re-posting these videos before the underlying legal issues are resolved. As the plaintiffs' August 5, 2005 letter to Hurricane Electric (Doc. No. 7; Plaintiff's Exhibit U) and Plaintiff Taylor's affidavit (Doc. No. 17; ¶4-6) both demonstrate, if the defendant were to file any more DMCA complaints, the absence of any of the defendant's video material on the plaintiffs' website precludes the defendant from causing the very injury the plaintiffs now seek to have the Court prevent. This failure to show any risk of irreparable harm is sufficient grounds for the Court to deny the plaintiffs' motion for interim injunctive relief. See Blackwelder, 550 F.2d at 196 (4th Cir. 1977) (likelihood of success on the merits alone, without any showing of a risk of irreparable harm, is not sufficient to warrant the issuance of a preliminary injunction). The Court, therefore, need not examine the plaintiffs' showing as to either their likelihood of success on the merits or the other remaining factors.

**THEREFORE, IT IS HEREBY ORDERED** that Plaintiffs' Motion for A Preliminary Injunction is **DENIED**.

Signed: August 9, 2006

Robert J. Conrad, Jr.
Chief United States District Judge